UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

C.C., an infant, by and through her
legal guardian and natural mother,
Cynthia Camarata,

                Plaintiff,        6:14-CV-0975
                                  (GTS/TWD)

v.

POLARIS INDUSTRIES, INC.,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| THE SIMON LAW FIRM, P.C.<br>  Counsel for Plaintiff<br>800 Market Street, Suite 1700<br>St. Louis, MO 63101 | JOHN G. SIMON, ESQ.<br>RYAN A. KEANE, ESQ.<br>AMY C. GUNN, ESQ.<br>ANTHONY R. FRIEDMAN, ESQ.<br>ANTHONY G. SIMON, ESQ. |
| GETNICK LIVINGSTON ATKINSON<br>& PRIORE, LLP<br>  Co-counsel for Plaintiff<br>258 Genesee Street, Suite 401<br>Utica, NY 13502 | THOMAS L. ATKINSON, ESQ. |
| BARCLAY DAMON LLP<br>  Counsel for Defendant<br>125 East Jefferson Street<br>Syracuse, NY 13202 | ROBERT A. BARRER, ESQ.<br>MICHELLE K. DeKAY, ESQ. |
| BOWMAN & BROOKE LLP<br>  Co-counsel for Defendant<br>2901 North Central Avenue, Suite 1600<br>Phoenix, AZ 85012 | JEFFREY C. WARREN, ESQ.<br>PAUL G. CEREGHINI, ESQ. |
| BOWMAN & BROOKE LLP<br>  Co-counsel for Defendant<br>150 South Fifth Street, Suite 3000<br>Minneapolis, MN 55402 | JENNIFER L. BULLARD, ESQ. |

HON. GLENN T. SUDDABY, Chief United States District Judge

**DECISION and ORDER**

Currently before the Court, in this products liability action filed by C.C., an infant ("Plaintiff" or "C.C."), by and through her legal guardian and natural mother, Cynthia Camarata, against Polaris Industries, Inc. ("Defendant" or "Polaris"), is Plaintiff's motion for a new trial pursuant to Fed. R. Civ. P. 59(a) and Defendant's motion for a bill of costs. (Dkt. Nos. 217, 218.) For the reasons set forth below, Plaintiff's motion is denied and Defendant's motion is granted in part and denied in part.

**I.     RELEVANT BACKGROUND**

**A.     Relevant Procedural History**

Because this Decision and Order is intended primarily for the review of the parties, who are familiar with the proceedings of this case (including the pre-trial motions and the jury trial that took place between August 15, 2017, and August 25, 2017), the Court will not include a summation of that history here. Rather, the Court will proceed directly to a description of the parties' briefing on the motions.

**B.     Parties' Briefing on Plaintiff's Motion for a New Trial**

**1.     Plaintiff's Memorandum of Law**

Generally, liberally construed, Plaintiff's motion for a new trial asserts the following four arguments: (1) the Court erred in allowing into evidence exhibits and testimony concerning the cause of the vehicle overturn and C.C.'s alleged negligence in operating the vehicle because this was more properly a "crashworthiness" case where the injuries caused by the defect in the vehicle's design were clearly distinguishable from the injuries caused by the crash itself, and

such evidence was therefore unfairly prejudicial and confusing to the jury; (2) the Court erred in instructing the jury that Defendant might not be liable if C.C.'s father's act of allowing her to operate the vehicle was an intervening or superceding act because, under New York law, such act does not qualify as an intervening or superceding act due to the fact that it was not "abnormal" or "unforeseeable"; (3) the Court erred in disallowing evidence of similar incidents by virtue of applying an improperly high standard for determining what constitutes "substantial similarity," namely requiring that the similar incidents involve the same make/model of vehicle, the same injury, or a minor operator; and (4) the Court erred in disallowing evidence related to wrist restraints because "the very existence of wrist restraints, and their use among experienced drivers of off-road vehicles, shows the unreasonableness of Defendant's position that its warning to drivers to just 'keep hands and arms inside the vehicle' was adequate." (Dkt. No. 217, Attach. 1, at 5-11 [Pl.'s Mem. of Law].)[1]

### 2. Defendant's Opposition Memorandum of Law

Generally, in opposition to Plaintiff's motion, Defendant asserts the following five arguments: (1) overall, Plaintiff's arguments for a new trial are merely a repetition of arguments made previously in pre-trial motions, in pre-trial conferences, or at trial, and therefore are not proper subjects for a motion for a new trial; (2) the Court properly admitted evidence concerning the facts and circumstances leading to the crash and Plaintiff's injuries because (a) this is not a "crashworthiness" case were the injuries are divisible, (b) Plaintiff failed to submit any evidence at the trial that changed the landscape since the Court's ruling on Plaintiff's motion *in limine* as

---

[1] Page citations refer to the page numbers used on CM/ECF rather than the actual page numbers contained in the parties' respective motion papers.

to the issue of "crashworthiness," (c) allowing evidence of contributory conduct is proper pursuant to N.Y. C.P.L.R. § 1411, and (d) Plaintiff has not offered any evidence to show that presenting this evidence confused or misled the jury particularly because there were jury instructions about the purpose for which such evidence could be used; (3) the jury instruction related to intervening and superceding causes was properly submitted to the jury because C.C.'s father's conduct was abnormal, the extensive warnings on the vehicle rendered it unforeseeable to Polaris that a user would flagrantly disregard those warnings, and the jury instruction on this issue was not prejudicial to Plaintiff because it is unlikely that this is the only element of the cause of action that caused the unfavorable jury verdict; (4) the Court properly excluded evidence of alleged similar incidents because (a) these incidents were significantly different from the incident that caused Plaintiff's injuries, (b) Plaintiff never sought to admit these incidents again at trial as allowed by the Court's previous order on a motion *in limine*, (c) these incidents were inadmissible hearsay, and (d) any probative value of these incidents is outweighed by the danger of unfair prejudice; and (5) the Court properly excluded evidence related to wrist restraints because (a) such evidence is not relevant, (b) it would have imposed a serious risk of use for the improper purpose of showing an alternative design (particularly because Plaintiff had previously attempted to admit this evidence for that purpose), and (c) the potential for unfair prejudice outweighed any possible probative value.  (Dkt. No. 230, at 1-19 [Def.'s Opp'n Mem. of Law].)

### C. Parties' Briefing on Defendant's Motion for a Bill of Costs

#### 1. Defendant's Memorandum of Law

Generally, in its motion, Defendant requests the costs claimed in its Bill of Costs, arguing that the items claimed are correct, were necessarily incurred in the case, and were actually and necessarily performed. (Dkt. No. 218, Attach. 2, at 1 [Bullard Aff.].) Specifically, Defendant requests the following costs: (1) a total of $420 for service of summons and subpeonas; (2) a total of $18,069.95 for printed or electronically recorded transcripts; (3) a total of $488.48 for witness fees; (4) a total of $11,230.64 for exemplification; and (5) $20 for docket fees. (Dkt. No. 220, at 1-5 [Bullard Suppl. Aff.].)

#### 2. Plaintiff's Opposition Memorandum of Law

Generally, in opposition to Defendant's motion, Plaintiff argues that Defendant's motion should be denied for the following four reasons: (1) granting Defendant's motion would be inequitable because C.C. is a minor and a full-time 9th grade student with no income, savings, or other means to satisfy Defendant's Bill of Costs, while Defendant is a multi-billion dollar corporation, and because she brought this action in good faith; (2) Defendant has not shown that the depositions for which it seeks costs were used at trial or were reasonably necessary for trial; (3) Defendant seeks a significant amount of non-taxable fees, including recorded transcripts, stenographer appearance fees, transcript shipping fees, fees for e-mailed transcripts, and copying fees not necessarily obtained for use in this case; and (4) the fact that Defendant obtained benefit from the use of a *guardian ad litem* without being assessed any of the costs associated with the *guardian ad litem* should be taken into account when determining the amount of costs to shift to Plaintiff. (Dkt. No. 232, at 1-16 [Pl.'s Opp'n Mem. of Law].)

## II. GOVERNING LEGAL STANDARDS

### A. Legal Standard Governing a Motion for a New Trial

Rule 59(a) of the Federal Rules of Civil Procedure provides, in pertinent part, that "[t]he court may, on motion, grant a new trial on all or some of the issues–and to any party– . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1)(A). The Second Circuit has interpreted this standard to permit the granting of new trials when "in the opinion of the district court, the jury has reached a seriously erroneous result or the verdict is a miscarriage of justice." *DLC Mgmt. Corp. v. Town of Hyde Park*, 163 F.3d 124, 133 (2d Cir. 1998) (internal quotation marks omitted); *Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 911 (2d Cir. 1997). Examples of such a serious error or a miscarriage of justice include when "the verdict is against the weight of the evidence," or when "for the reasons stated the trial was not fair to the moving party." *Mallis v. Bankers Trust Co.*, 717 F.2d 683, 691 (2d Cir. 1983). However, "the court should only grant a motion for a new trial when the jury's verdict is 'egregious.'" *DLC Mgmt. Corp.*, 163 F.3d at 134 (internal quotation marks omitted); *Dunlap-McCuller v. Riese Org.*, 980 F.2d 153, 158 (2d Cir. 1992), *cert. denied*, 510 U.S. 908, 114 S. Ct. 290 (1993). "[I]n addressing a Rule 59 motion, the court may 'independently weigh the evidence presented at trial to determine whether the jury's verdict is 'seriously erroneous' or resulted in a 'miscarriage of justice.'" *Edwards v. Schrader-Bridgeport Int'l., Inc.*, 205 F. Supp. 2d 3, 8 (N.D.N.Y. 2002) (Scullin, C.J.). "In doing so, the court 'is afforded considerable discretion.'" *Edwards*, 205 F. Supp. 2d at 8. Additionally, "[i]t is well-settled that Rule 59 is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple.'" *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998).

### B. Legal Standards Governing a Motion for a Bill of Costs

Rule 54(d)(1) of the Federal Rules of Civil Procedure states in relevant part that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs . . . should be allowed to the prevailing party." The costs a prevailing party may recover include clerk's fees, fees for transcripts necessarily obtained for use in the case, fees for printing and witnesses, fees for copies necessarily obtained for use in the case, and a $20 dollar docket fee. *See* 28 U.S.C. §§ 1920, 1923.

Where a bill of costs is challenged, "[a] district court reviews the clerk's taxation of costs by exercising its own discretion to decide the cost question itself." *Whitfield v. Scully*, 241 F.3d 264, 269 (2d Cir. 2001) (citation and internal quotation marks omitted). In exercising this discretion however, it must be recognized that a cost "award against the losing party is the normal rule obtaining in civil litigation, not an exception." *Whitfield*, 241 F.3d at 270 (citation omitted). Thus, "the losing party has the burden to show that costs should not be imposed; for example, costs may be denied because of misconduct by the prevailing party, the public importance of the case, the difficulty of the issues, or the losing party's limited financial resources." *Id*. (citations omitted). "[W]hen a prevailing party is denied costs, a district court must articulate its reasons for doing so." *Id*. (citation omitted).

### III. ANALYSIS

#### A. Whether Plaintiff Should Be Granted a New Trial

After carefully considering the matter, the Court denies Plaintiff's motion for each of the reasons stated in Defendant's opposition memorandum of law. *See*, *supra*, Part I.B.2. of this Decision and Order. (Dkt. No. 230, at 1-19 [Def.'s Opp'n Mem. of Law].) To those reasons, the Court adds the following four points.

First, as Defendant argues, the objections that Plaintiff raises in her motion for a new trial were all previously the subject of pre-trial motions or other discussions before and during the course of the trial.  The Court finds no error in its previous rulings on these issues, and certainly not an error that resulted in the jury reaching a seriously erroneous result or in a serious miscarriage of justice.  Given that Plaintiff's arguments consist of disagreements with the Court's rulings and instructions rather than an egregious unfairness in the verdict, Plaintiff's objections are more appropriate for an appeal than a motion for a new trial.  *See Geshwind v. Garrick*, 738 F. Supp. 792, 794 (S.D.N.Y. 1990) ("Plaintiff simply disagrees with the Court's findings rather than pointing to 'manifest errors of fact.'  There is therefore no basis for granting a new trial.  Rather than relitigate matters already considered by this Court, plaintiff should address his arguments to the Court of Appeals for the Second Circuit.").

Second, as to Plaintiff's argument regarding the admission of evidence related to Plaintiff's fault-causing conduct, in addition to relying on the reasons outlined in Defendant's opposition memorandum of law, the Court notes that the jury instructions adequately accounted for Plaintiff's concerns that admission of this evidence confused or misled the jury.  In particular, when instructing the jury on Defendant's defense of comparative fault, the Court stated that, "*[i]f you find that the Plaintiff has established one or more of her claims* . . . then you will proceed to consider whether Plaintiff was negligent in her actions and whether her negligence was a substantial factor in causing her injuries."  (Dkt. No. 208, at 21 [Jury Instructions] [emphasis added].)  This instruction indicated to the jury that it should consider whether Plaintiff was negligent (and whether that negligence was a substantial factor in causing her injuries) only after it had considered whether she established one or more of her claims; the

-8-

instruction therefore limited the risk that the jury would consider the evidence of Plaintiff's negligent conduct in relation to proving her claims. A jury is presumed to follow the instructions given by the Court and Plaintiff has not shown any evidence to suggest that the jury failed to properly follow these instructions when considering Plaintiff's claims. *See United States v. Becker*, 502 F.3d 122, 130 (2d Cir. 2007) ("Generally, we presume that juries follow limiting instructions."); *Britt v. Garcia*, 457 F.3d 264, 272 (2d Cir. 2006) ("It is a fundamental proposition that [a] jury is presumed to follow the instructions of the trial judge."); *LNC Invs., Inc. v. Nat'l Westminster Bank, N.J.*, 308 F.3d 169, 117 n.10 (2d Cir. 2002) ("The district court's instructions were quite clear on this point and we must presume the jury to follow its instructions."). It therefore must be presumed that the jury would have considered the evidence of Plaintiff's negligent conduct only after determining whether Plaintiff had meet the elements of one or more of her claims.[2] Given this instruction, the relevance of Plaintiff's negligent conduct to Defendant's defense, and the absence of any evidence indicating that Plaintiff was unfairly prejudiced, the Court declines to grant a new trial based on the admission of evidence related to C.C.'s negligent conduct.

Third, the Court finds that instructing the jury as to an intervening and superceding cause based on the actions of C.C.'s father was not error meriting a new trial. Plaintiff's objection to the inclusion of this instruction is primarily an argument that C.C.'s father's actions were not extraordinary or unforeseeable. (Dkt. No. 217, Attach. 1, at 7-8 [Pl.'s Mem. of Law].) The

---

[2] Of note, the jury found that Plaintiff had not proven, by a preponderance of the evidence, all of the elements of any of her claims. (Dkt. No. 209, at 1 [Verdict Form].) There is therefore no indication that the jury ever needed to consider Defendant's defense of comparative negligence or the evidence of Plaintiff's negligent conduct.

evidence, discussed in detail in Defendant's opposition memorandum of law, sufficiently indicates that a reasonable fact finder could conclude that the conduct of C.C.'s father in allowing his eleven-year-old daughter to drive a vehicle intended for adults outside of his supervision with two other young children as passengers, among other things, was an abnormal or unforeseeable action that could be found to be a superceding or intervening cause.  (Dkt. No. 230, at 10-13 [Def.'s Opp'n Mem. of Law].)  The Court therefore cannot agree that the inclusion of the jury instruction on an intervening and superceding cause was erroneous or resulted in a miscarriage of justice.

Fourth, and last, Plaintiff's argument that the Court applied an improperly heightened standard for what constitutes a "substantially similar" incident is not persuasive.  Although evidence of similar incidents may be admitted to prove "'negligence, a design defect, notice of a defect, or causation,'" "the proponent must establish . . . relevance by showing that they occurred under the same or substantially similar circumstances as the accident at issue.'"  *In re Gen. Motors LLC Ignition Switch Litig.*, 14-CV-2543, 2016 WL 796846, at *2 (S.D.N.Y. Feb. 25, 2016).  Evidence offered for the purpose of showing the existence of a dangerous condition requires "'a high degree of similarity because it weighs directly on the ultimate issue to be decided by the jury.'"  *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 796846, at *2.  Evidence offered for the purpose of proving causation is often considered in light of multiple factors, including whether (a) "the products are similar," (b) "the alleged defect is similar," (c) "causation related to the defect in other incidents," and (d) "exclusion of all reasonable secondary explanations for the cause of the other incidents."  *Id.* (quoting *Watson v. Ford Motor Co.*, 389 S. Ct. 434, 453 [2010]).  Evidence offered to show notice is subject to a more relaxed

standard. *In re Gen. Motors LLC Ignition Switch Litig.*, 2016 WL 796846, at *2. Notably, "a 'district court is owed considerable deference in its determination of substantial similarity.'" *Id.* Given the above standards and a consideration of the various purposes for which Plaintiff intended to offer such similar incidents, the Court declines to find error in its previous rulings on this evidence for the reasons in Defendant's opposition memorandum of law and previous pre-trial memoranda (to the extent they are consistent with the Court's previous rulings on these evidentiary issues). (Dkt. No. 132, at 17-25; Dkt. No. 157, at 2-14; Dkt. No. 230, at 14-17 [Def.'s Opp'n Mem. of Law].)

For all of these reasons, Plaintiff's motion is denied.

**B.**     **Whether the Court Should Grant Defendant's Motion for a Bill of Costs**

After carefully considering the matter, the Court finds it appropriate to grant Defendant's motion in part and deny its motion in part for the following reasons.

The Court first addresses Plaintiff's argument that granting Defendant's Bill of Costs would be inequitable. Plaintiff argues that Defendant's Bill of Costs should be denied based on a consideration of her age, disabling injury and lack of employment, the financial circumstances of her mother, the good faith nature of her actions in bringing her claims, and the fact that Defendant was not responsible for paying any of the fees for her *guardian ad litem*. (Dkt. No. 232, at 2-4, 16 [Pl.'s Opp'n Mem. of Law].) As Plaintiff notes, the Second Circuit has recognized that a district court is permitted to exercise "equitable discretion in awarding or denying costs pursuant to Fed. R. Civ. P. 54." *Moore v. Cnty of Delaware*, 586 F.3d 219, 221 (2d Cir. 2009). In exercising this discretion, courts consider factors including "misconduct by the prevailing party, the public importance of the case, the difficulty of the issues, . . . the losing

party's limited financial resources," and whether the claims were brought in good faith. *Williams v. Arctic Cat, Inc.*, 11-CV-0445, 2014 WL 4105286, at *2 (N.D.N.Y. Aug. 20, 2014) (McAvoy, J.). "The Court is permitted to 'deny costs on account of a losing party's indigency, but indigency *per se* does not automatically preclude an award of costs.'" *Williams*, 2014 WL 4105286, at *2 (quoting *Whitfield v. Scully*, 241 F.3d 264, 269 [2d Cir. 2001]).

The Court finds that the equitable considerations in this case merit reducing the amount of costs that Defendant is entitled to recover. Plaintiff is a minor child who, at the time the motions at issue were filed, was a student in the ninth grade who was unemployed (and presumably not even legally employable except in a very limited capacity) and who is learning to function without use of her left hand, which was amputated as a result of the incident at issue in this case. (Dkt. No. 232, Attach. 1, at ¶¶ 5-7 [Camarata Aff.].) The only income that Plaintiff allegedly receives is $217 per month as a result of her father's disability benefits and she does not have a savings or retirement account or own any property or equity in property. (*Id.* at ¶ 7-8.) Plaintiff's mother and legal guardian states that her own annual income from full-time employment as a cashier at a grocery store is "less than what Polaris is requesting in its Bill of Costs." (*Id.* at ¶ 4.) Although this statement is hardly specific, it is sufficient, along with Plaintiff's own age and resources and the lack of any indication that Plaintiff's lawsuit was not brought in good faith, to support a finding that requiring Plaintiff to pay the full cost of $30,229.07 to Defendant would offend common notions of equity.

With these equitable considerations in mind, the Court turns to Plaintiff's specific objections to Defendant's Bill of Costs. First, Plaintiff argues that Defendant is not entitled to recover costs for printed or electronically recorded deposition transcripts because Defendant has

not shown that these depositions were entered into evidence or otherwise used at trial; because they were not used at trial, Plaintiff reasons, they were not "necessarily obtained for use in the case." (Dkt. No. 232, at 5 [Pl.'s Opp'n Mem. of Law].) "Generally speaking, transcripts are necessarily obtained for use in the case if used or received in evidence at trial, or submitted for consideration on a dispositive motion." *New Skete Farms, Inc. v. Murray*, 06-CV-0486, 2009 WL 10680320, at *3 (N.D.N.Y. Apr. 3, 2009) (Sharpe, J.) (citing cases). "However, even where the transcripts are not so used, transcript costs are properly awarded if the court is convinced that they were otherwise necessary in the case." *New Skete Farms, Inc.*, 2009 WL 10680320, at *3 (citing *In re Air Crash Disaster at John F. Kennedy Int'l Airport*, 687 F.2d 626, 631 [2d Cir. 1982]). Here, at least eight deposition transcripts were used at trial (e.g., the transcripts of the depositions of Susannah Rose, Brent Erspamer, C.C., Stephen Batzer, Jeffrey Eyres, M.H., Nicholas Camarata, and Michael Muise). Moreover, even if these depositions were not used or received into evidence at trial, approximately two-thirds of the depositions were submitted (at least in part) for consideration with the motions for summary judgment that occurred during the course of this litigation.[3] Consequently, Defendant would ordinarily be permitted to recover costs for the original and one copy of those transcripts. *Cutie v. Sheehan*, 11-CV-0066, 2016 WL 3661395, at *5 (N.D.N.Y. July 5, 2016) (D'Agostino, J.). The only deposition transcripts that the Court cannot readily identify as having been used are the transcripts of the depositions of

---

[3] *See, e.g.*, Dkt. No. 74, Attach. 1, at 7-22 [attaching transcripts of depositions of C.C. and Nicholas Camarata]; Dkt. No. 75, Attach. 1, at 1-79 [attaching transcripts of deposition of Walter Short]; Dkt. No. 82, Attach. 4, 5, 7, 8, 9, 10, 11, 12, 13, 14, 15, 17, 18, 19, 20 [attaching transcripts of depositions of Nicholas Camarata, C.C., M.H., Graeme Fowler, William Newberry, Kevin Breen, Kenneth d'Entremont, Robert Nibilini, Brent Erspamer, Jeffrey Eyres, Robert Cunitz, Nathan Dorris, and Stephen Batzer].)

Joseph Camarata, Raymond Camarata, Brian Coleman, Jennifer Draper, and Christopher Moser. From the invoices adduced by Defendant, the Court estimates the cost of these five depositions as approximately $960.

Also as to these transcripts, Plaintiff argues that fees for delivery, postage and handling, and stenographer fees are not taxable or recoverable costs. (Dkt. No. 232, at 6 [Pl.'s Opp'n Mem. of Law].) Delivery charges and postage and handling are not considered taxable costs under 28 U.S.C. § 1920 in the absence of a specific fee-shifting statute. *Cutie*, 2016 WL 3661395, at *5; *Glory Days, Inc. v. Glory Days, LLC*, 06-CV-0036, 2007 WL 1160406, at *9 (N.D.N.Y. Apr. 17, 2007) (Peebles, M.J., Mordue, C.J.); *Disney Enters. Inc. v. Merchant*, 05-CV-1489, 2007 WL 1101110, at *9 (N.D.N.Y. Apr. 10, 2007) (Mordue, C.J.). Defendant therefore cannot recover such expenses. From the invoices adduced by Defendant, the Court estimates those non-recoverable expenses as amounting to approximately $130.00. However, stenographer fees are generally recoverable. *See Hines v. City of Albany*, 862 F.3d 215, 219 n.2 (2d Cir. 2017) (noting that 28 U.S.C. § 1920 includes court reporter charges as part of taxable costs); *Document Sec. Servs., Inc. v. Coupons.com, Inc.*, 11-CV-6528, 2015 WL 1189551, at *4 (W.D.N.Y. Mar. 16, 2015) (allowing recovery of court reporter attendance fees related to depositions taken for the case, noting that "the 'Guidelines for Bills of Costs" indicate that 'court reporter fees for attendance' are generally taxed as costs"); *Manson v. City of Chicago*, 825 F. Supp. 2d 952, 956 (N.D. Ill. 2011) (noting that "the Seventh Circuit has consistently held that [deposition attendance fees charged by the court reporter] may be taxed as costs"). To the extent that some of these fees were associated with depositions that the Court finds were not used (and therefore not recoverable), those fees (totaling approximately $205) will be disallowed.

Second, Plaintiff argues that Defendant's requested fees for exemplification and copying should be reduced because such costs were beyond what was necessarily obtained for use in the case. (Dkt. No. 232, at 15 [Pl.'s Opp'n Mem. of Law].) Section 1920 of Title 28 of the United States Code permits recovery of the cost of making copies that are necessarily obtained for use in the case, including where the underlying document was not admitted at trial. 28 U.S.C. § 1920(4); *U.S. for Use and Benefit of Evergreen Pipeline Constr. Co., Inc. v. Merritt Meridian Constr. Corp.*, 95 F.3d 153, 173 (2d Cir. 1996). However, "the burden of establishing the reasonableness of each charge rests with the prevailing party." *Cutie*, 2016 WL 3661395, at *5. In this case, Defendant submitted 62 pages of entries showing copying and printing costs, including the number of pages, whether it was a copying or printing task, whether it was in color or black-and-white, and the cost. (Dkt. No. 220, Attach. 1, at 38-100.) Because Defendant has shown that these costs were incurred for the purpose of preparing two sets of trial binders required by the Court, the Court rejects Plaintiff's argument.

Considering the Plaintiff's specific objections and the equitable considerations discussed above, the Court finds that the costs sought in Defendant's Bill of Costs should be reduced to $14,467.04. The Court arrives at this amount by starting with Defendant's requested amount of $30,229.07, subtracting from it $1,295 (i.e., $1,165 in "unused" deposition transcripts [including associated stenographer fees] plus $130 in non-recoverable expenses), and then dividing the remaining amount of $28,934.07 in half so that each party shares equally in the burden.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for a new trial pursuant to Fed. R. Civ. P. 59 (Dkt. No. 217) is **<u>DENIED</u>**; and it is further;

**ORDERED** that Defendant's motion for a Bill of Costs pursuant to Fed. R. Civ. P. 54 (Dkt. No. 218) is **GRANTED** in part and **DENIED** in part.  The amount of costs owed to Defendant by Plaintiff is reduced from $30,229.07 to $14,467.04.

Dated: June 19, 2018
       Syracuse, New York

_____
Hon. Glenn T. Suddaby
Chief U.S. District Judge